IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:22-mj-9243 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| LeMARK ROBERSON, | ) | |
| | ) | |
| Defendant. | ) | **DETENTION ORDER** |
| | ) | |

Now pending before the Court is the United States' oral motion for detention. The Court held a detention hearing via Zoom on November 17, 2022.  Pretrial Services recommended that Mr. Roberson be released on a $50,000 unsecured bond with conditions, including location monitoring at the discretion of the Pretrial Services Officer.  For the reasons set forth below, however, the Court finds that there are no conditions or combination of conditions that will reasonably assure the safety of the community or Mr. Roberson's appearance if he was released.

I.   **THE PRESUMPTION OF DETENTION AND DEFENDANT'S BURDEN OF PRODUCTION TO REBUT THE PRESUMPTION**

It is undisputed that a statutory presumption of detention exists in this case pursuant to 18 U.S.C. § 3142(e)(3)(D) because Mr. Roberson is charged in the United States District Court in the District of Kansas with two counts of involuntary servitude, in violation of 18 U.S.C. § 1584, and one count of conspiracy against rights, in violation of 18 U.S.C. § 241.  To rebut the presumption, Mr. Roberson must produce "some evidence" that he does not pose a danger to the community or

a risk of flight. *United States v. Stone,* 608 F.3d 939, 945 (6th Cir. 2010). As the Sixth Circuit has recognized, this is not a heavy burden. *See id.*

The Court finds that Mr. Roberson's counsel ably produced some evidence through proffer that Mr. Roberson is not a flight risk based on his family ties to the District of Kansas, his employment for over six years at the Veterans Administration Hospital in Cleveland, and his ownership of a home in Willoughby, Ohio. *See United States v. Tawfik,* No. 17-cr-20183-2, 2017 WL 1457494, at *5 (E.D. Mich. April 25, 2017) (finding in a human trafficking and drug-distribution conspiracy that the defendant rebutted the presumption of detention.) And while a much closer call, the Court finds that Mr. Roberson produced some evidence that he is not a danger to the community based on the recommendation of Pretrial Services that Mr. Roberson be released on a $50,000 unsecured bond with location monitoring at the discretion of the Pretrial Officer. *See id.*

Accordingly, the Court finds that Mr. Roberson put forth sufficient evidence to satisfy his burden of production to rebut the presumption of detention. Yet, "[e]ven when a defendant satisfies his burden of production, however, the presumption of detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Stone,* 608 F.3d at 945; *see also Tawfik,* 2017 WL 1457494, at *5. As the Sixth Circuit has recognized, "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Stone,* 608 F.3d at 945; *see also Tawfik,* 2017 WL 1457494, at *5. "To rebut the presumption, therefore, a defendant should present all the special features of his case that take it outside the congressional paradigm." *Stone,* 608 F.3d at 945; *see also Tawfik,* 2017 WL 1457494, at *5.

Case: 1:22-mj-09243-JDA  Doc #: 9  Filed: 11/23/22  3 of 13.  PageID #: 35

## II.    THE UNITED STATES' BURDEN OF PERSUASION

The Court must next weigh the factors in Section 3142(g) to determine whether the United States has met its burden of persuasion that either: (1) by a preponderance of the evidence that Mr. Roberson poses a risk of flight; or (2) by clear and convincing evidence that Mr. Roberson poses a risk to the safety of others and the community.

The threshold question is whether this Court should apply and analyze the 3142(g) factors in relation to the Northern District of Ohio (the arresting jurisdiction) or the District of Kansas (the charging jurisdiction).  The Bail Reform Act offers little guidance, and there is a dearth of case law on this point.  In *United States v. Thomas,* 992 F. Supp. 782, 786-87 (D.V.I. 1998), however, the court recognized that "Rule 40 and 18 U.S.C. 3145 take into account the differing interests of the charging and the arresting jurisdiction and appropriately allocate the authority between the two for detaining the defendant or setting his release conditions."  The *Thomas* court explained this "appropriate allocation" means that the arresting district has an initial role in determining conditions for release or ordering detention:

> The magistrate judge in the arresting jurisdiction holds the initial hearing to determine the conditions under which the defendant should be released, or whether the defendant should be detained if the government makes the request in the Rule 40 proceeding. It is appropriate that the arresting jurisdiction have this initial role because this is where the defendant more often than not will reside and work and where her community ties can be most easily presented by the defendant and most accurately evaluated by the magistrate judge presiding there as they bear on setting the conditions for release or ordering detention.

*Id.*

*Thomas* further explained that it is the primary role of the charging district to make a final determination on detention or conditions of release:

> At the same time, Rule 40 and section 3145 also recognize that it is the charging or indicting jurisdiction in which the defendant will be tried for the alleged offense(s) which has the greatest interest in his appearing for trial and his potential for danger to the community.6 The interests of the jurisdiction where the crime was allegedly committed are recognized and accommodated by the provisions of section 3145 requiring that all appeals of the

detention or release order entered by the arresting magistrate judge shall be to a district judge in the charging jurisdiction. Thus, the district which has the greatest interest in the prosecution of the defendant is allocated the final decision on the defendant's detention or conditional release before trial.

*Id.* at 787.  Applying *Thomas* and in recognition of this Court's role in making an initial determination on detention or conditions of release, this Court will primarily focus upon the 3142(g) factors as they relate to the Northern District of Ohio.  But because the District of Kansas will ultimately be charged with making a final determination on detention or conditions of release, this Court will at times also evaluate the 3142(g) factors as they relate to that district for purposes of judicial economy.

Applying the 3142(g) factors below, the Court finds that, while Mr. Roberson has rebutted the presumption of detention, consideration of all the evidence – including the evidentiary weight of the now-rebutted presumption – requires detention because there are no conditions or combinations of conditions that will reasonably assure the community's safety or Mr. Roberson's appearance if he was released.

**A.      Nature and Circumstances of the Offenses Charged**

This factor considers whether the offense charged involves a controlled substance, is a crime of violence, or has a minor victim.  18 U.S.C. § 3142(g)(1).  The Government's proffer and the grand jury's indictment implicate several of the express factors under 18 U.S.C. § 3142(g)(1) because Mr. Roberson is charged with perpetrating serious and violent crimes against vulnerable, minor victims, and these crimes involved the use of controlled substances.  Specifically, as set forth below, the Indictment alleges that from approximately January 1, 1996, to December 31, 1998, Mr. Roberson and others provided a location at Delevan Apartments in Kansas City for criminal activity, including sex trafficking of minors.

4

### 1.  __The Office Unit__

The Indictment alleges that one of Mr. Roberson's co-conspirators kept one of the apartment units at Delevan as his "office" (the "office unit"), where he stored guns, drugs, and cash used in his criminal activities.  The Indictment further alleges that Mr. Roberson and others held young girls ranging from 13 years old to 17 years old in the office unit.  These young girls were locked in the office unit and forced to provide sexual services to Mr. Roberson and his co-conspirators.

### 2.  __Person 1__

The Indictment alleges that Mr. Roberson met Person 1 when she was a teenager who was recently released from a juvenile correctional facility, and whose mother had committed suicide.  Mr. Roberson allegedly moved Person 1 into the office unit for approximately one year, often locking her inside.  The Indictment further alleges that Mr. Roberson forced Person 1 to provide sexual services to him and – on multiple occasions – vaginally raped her, forced her to perform oral sex, beat her with an open fist, and threatened to kill her.

When one of Mr. Roberson's co-conspirators told him that Person 1 had smiled at another man, the Indictment alleges that Mr. Roberson struck Person 1 with an iron and dragged her down a staircase by her hair.  The Indictment further alleges that Mr. Roberson intimidated Person 1 by telling her that other women at Delevan suffered beatings as punishment, and that one woman was strung upside-down by her feet in a closet as punishment.  And even after Person 1 told one of Mr. Roberson's co-conspirators that she desperately wanted to escape, the Indictment alleges that Mr. Roberson refused to allow her to leave.  In fact, the Indictment alleges that Mr. Roberson refused to allow Person 1 to seek medical care when she was experiencing severe abdominal pain and

vaginal bleeding.  When Person 1 managed to escape and went to the hospital, she was diagnosed as suffering from an eight-week ectopic pregnancy as a result of impregnation by Mr. Roberson.

### 3.  **The Working House**

The Indictment further alleges that Mr. Roberson and others also held young girls in multiple units at Delevan that were separate from the office unit.  One of those units was a "relaxed" area, where young girls used alcohol and drugs with Mr. Roberson and his co-conspirators.  The other unit was a "working house," where some girls were forced to perform sexual services for adult men who visited Delevan.  Mr. Roberson and his co-conspirators provided drugs to the addicted girls in the working house.  Mr. Roberson and his co-conspirators also beat girls who did not agree to provide sexual services in exchange for shelter, drugs, or clothes.  Mr. Roberson and his co-conspirators sometimes collected money at the door from adult men and then allowed those men to "select" a girl and escort her to a bedroom for sexual services.

### 4.  **Person 2**

The Indictment further alleges that one of Mr. Roberson's co-conspirators selected Person 2 to live at Delevan in approximately January 1997.  Person 2 was only 16 years old, she had been released from a juvenile correctional facility, and she had nowhere to live.  Person 2 initially lived in the "relaxed" part of Delevan.  After a short time, though, she was moved into the "working house."  There, Mr. Roberson and his co-conspirators forced her to provide sexual services to men – in order to avoid being beaten – for approximately four months.  Mr. Roberson repeatedly vaginally raped Person 2.  And when she fought back, Mr. Roberson struck her, shoved her, and pulled her hair.  The Indictment further alleges that Mr. Roberson intimidated Person 2 by telling her that his co-conspirators had "murdered a woman by burning her alive and watching her dance around like a chicken with no head."

The nature of the offenses here weigh heavily in favor of detention because Mr. Roberson is charged with serious crimes of violence against multiple vulnerable, minor victims that he committed over the course of a year and involved the use of controlled substances. Courts within the Sixth Circuit in factually similar cases have reached the same conclusion. *See Tawfik,* 2017 WL 1457494, at \*6 (finding that the nature and circumstances of the offense, which allege the defendant's "involvement in a conspiracy in which his co-Defendants employed beatings, various threats, degrading actions, and dangerous, addictive drugs to coerce the human trafficking victims into commercial sex acts," weighed in favor of detention under 3142(g)(1)); *United States v. Pruitt,* No. 17-cr-20183-4, 2020 WL 1698661, at \*5 (E.D. Mich. April 8, 2020) (same); *United States v. Ford,* No. 17-20183, 2019 WL 6483413, at \*4 (E.D. Mich. July 15, 2019) (same); *United States v. McGaughy,* No. 18-cr-20206, 2019 WL 4784780, at \*4 (E.D. Mich. Oct. 1, 2019) (finding that 3142(g)(1) factor weighed in favor of detention in indictment alleging a serious drug trafficking offense, and use of narcotics to control addicted women and coerce them into acts of prostitution); *United States v. Gardner,* No. 16-cr-20135, 2016 WL 2731189, at \*2 (E.D. Mich. May 11, 2016) (concluding that the 3142(g)(1) factor weighed in favor of detention because the alleged crime involves a minor victim and constitutes a crime of violence.)

Additionally, Mr. Roberson faces a potential term of life imprisonment if convicted, which reinforces the serious nature of these crimes. *See, e.g., Baldwin v. New York,* 399 U.S. 66, 68 (1970) ("In deciding whether an offense is 'petty,' we have sought objective criteria reflecting the seriousness with which society regards the offense ... and we have found the most relevant such criteria in the severity of the maximum authorized penalty.")  And the Sixth Circuit has recognized that significant criminal penalties "provide a strong incentive to flee." *United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at \*1 (6th Cir. Mar. 18, 2020) (defendant faced up to 20 years in

prison); *see also United States v. You,* No. 1:19-CR-14, 2019 WL 2426659, at *3 (E.D. Tenn. June 10, 2019) (collecting cases) *United States v. Ho,* No. 3:16-CR-46-TAV-HBG-1, 2016 WL 5875005, at *4 (E.D. Tenn. Oct. 7, 2016) (collecting cases).  Indeed, the district court in *Tawfik* found in factually similar circumstances that "[o]ther evidence of non-compliance includes the very lengthy sentences that [the defendant] faces, which Congress has deemed so suggestive of a risk of non-compliance that it established the presumptions of detention."  *Tawfik,* 2017 WL 1457494, at *6.  Accordingly, the nature and circumstances of the offenses charged here weigh in favor of detention based on both danger to the community and risk of flight.

### B.    Weight of the Evidence

The Sixth Circuit recognizes that this factor goes to the weight of the evidence of dangerousness or risk of flight, not the weight of the defendant's guilt.  *United States v. Stone,* 608 F.3d 939, 948 (6th Cir. 2010) (weight of the evidence goes to dangerousness); *see also United States v. Villegas,* No. 3:11-CR-28, 2011 WL 1135018, at *8 (E.D. Tenn. Mar. 25, 2011) ("[T]his factor goes to how convincing the government's arguments of … risk of flight are.").  Here, the weight of the evidence of Mr. Roberson's dangerousness is strong.  As set forth above, the Indictment alleges that Mr. Roberson and his co-conspirators used physical violence, threats, coercion, and intimidation to exploit young, vulnerable female victims and force them into commercial sex acts.  The Indictment further proffered that Mr. Roberson physically, sexually, and emotionally abused young girls and that, of all the co-conspirators, he was the most violent.

While Mr. Roberson's counsel pointed out that the offenses for which he is charged occurred more than twenty years ago, the Court finds that passage of time does not change the fact that the Indictment alleges that Mr. Roberson repeatedly – and over the course of approximately a year – committed sexually violent crimes against vulnerable, minor victims.  And the criminal

penalties for those crimes remain the same no matter when the crimes were committed.  The Court finds that this factor weighs in favor of detention based on the clear and convincing weight of the evidence as to dangerousness.  *See, e.g., Tawfik,* 2017 WL 1457494, at *6 (finding dangerousness under 3142(g)(2) based in part on allegations that the defendant personally abused prostitutes); *Pruitt,* 2020 WL 1698661, at *5 (finding dangerousness because the defendant and co-conspirators used "threats, physical violence, and coercion … to force the human trafficking victims into commercial sex acts").

As to risk of flight, the United States pointed to a 1996 case where Mr. Roberson failed to appear in court in Kansas, as well as a 2007 case where Mr. Roberson failed to appear in Illinois. While the United States concedes the criminal penalties in these prior cases did not carry the threat of significant jail time, the United States maintains that circumstances are different now because Mr. Roberson faces a potential term of life imprisonment.  As a result, any prior propensity to flee is now greatly enhanced.  *Pruitt,* 2020 WL 1698661, at *5 (finding risk of non-appearance in sex trafficking case); *see also You,* 2019 WL 2426659, at *3 (collecting cases for proposition that criminal penalties provide a strong incentive to flee); *Ho,* 2016 WL 5875005, at *4 (same). Accordingly, the Court finds that this factor weighs in favor of detention based on the preponderance of the evidence regarding risk of flight.

C.    **History and Characteristics of the Person**

The court must next consider the history and characteristics of a defendant, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."  18 U.S.C. § 3142(g)(3)(A).

9

Mr. Roberson's counsel, by way of testimonial evidence from Mr. Roberson's mother and through proffer, established that he has community or family ties to both the Northern District of Ohio and the District of Kansas.  Specifically, since Mr. Roberson's release from federal prison in 2016, he has resided in Cleveland, Ohio.  He initially lived with his cousin and in 2021 purchased a home in Willoughby, Ohio.  Mr. Roberson has worked as a Porter/Courier at the Veteran's Administration ("VA") hospital in Cleveland since 2016, and his mother testified that in the course of his employment he had received a certificate and a letter of appreciation from the VA.  Mr. Roberson's counsel stated that her belief the VA would continue to employ him, though counsel conceded this belief was based solely upon statements by Mr. Roberson, and she was unable to confirm this information with Mr. Roberson's supervisors.  Mr. Roberson's mother and sister are also long-term residents of Kansas City, Kansas.  Mr. Roberson's mother testified that, if he were released pending trial in this matter, Mr. Roberson could stay at her home while returning to Kansas City for court appearances.

However, "even where a defendant produces some evidence to rebut the presumption, the rebutted presumption retains evidentiary weight." *United States v. Hoskins*, 181 F.3d 105 (6th Cir. 1999) (internal citation omitted).  As set forth at length above, the Government's proffer includes evidence the Mr. Roberson was the "muscle" and "enforcer" in a sex trafficking conspiracy and that he brutally victimized young, vulnerable women.  Courts applying the 3142(g)(3) factor in factually similar circumstances to the instant case have held that it weighs in favor of detention. *See, e.g., Tawfik,* 2017 WL 1457494, at *7 (applying 3142(g)(3), the district court concluded that, based on the brutal sex trafficking allegations, the "defendant's character is lacking" and that "this factor ultimately weighs in favor of detention").  Moreover, the Court also takes note of the fact that Mr. Roberson has a criminal history dating back to 1987, when he was 25 years old.  *United*

*States v. Gardner,* 2016 WL 2731189, at *2 ("Notably omitted from Defendant's argument are references to his character, past conduct, and criminal history.") And as set forth above, Mr. Roberson has failed to appear in court on two occasions. Accordingly, the Court finds that this factor weighs in favor of detention.

### D. Nature and Seriousness of the Danger to Any Person or the Community

The final factor the Court must consider under § 3142(g) is "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g)(4). For the reasons discussed at length above, this Court finds that Mr. Roberson's release pending trial on violent sexual trafficking charges against minor, vulnerable victims presents a danger to the community, both in the Northern District of Ohio and the District of Kansas. Accordingly, this factor weighs in favor of detention.

### III. RELEASE CONDITIONS AND BURDEN OF PROOF

Section 3142(C)(1)(B) provides in relevant part that:

> If the officer determines that the release described in subsection (b) of this section will … endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person … subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure … the safety of any other person and the community…

*Id.* "The statute goes on to provide an illustrative list of the types of conditions that the Court may use to effect this purpose." *United States v. Beard,* 528 F.Supp.3d 764, 774 (N.D. Ohio 2021) (citing 18 U.S.C. § 3142(c)(1)(B)(i)-(xiv)).

Mr. Roberson's counsel relies on the Pretrial Services Report's recommendation of release -with the condition of electronic monitoring at the discretion of Pretrial Services Officer - to assert that Mr. Roberson should not be detained pending trial. The Court further recognizes that such conditions would "allow [Mr. Roberson] to assist in his defense against the charges consistent with

11

his strong liberty interest and the presumption of innocence." *Beard,* 528 F. Supp. 3d at 774.  In response, the United States argued that neither location monitoring nor home detention would mitigate the serious danger to the community presented by Mr. Roberson's release or his risk of non-appearance in light of the violent sexual trafficking charges involving minor, vulnerable victims, which carry a potential term of life imprisonment.

The Court finds the United States' argument to be well-taken because courts have recognized that "such risks are not easily mitigated, even within the confines of a defendant's home." *You*, 2019 WL 2426659, at *6.  And while electronic monitoring may alleviate some of the risk of flight, it would not reduce the entire risk and assure Mr. Roberson's appearance at trial. *Id.*  Moreover, home detention and location monitoring would not provide adequate protection to the community.  *See United States v. Hanson,* No. 3:22-CR-00076, 2022 WL 1813585, at *6 (N.D. Ohio May 3, 2022) ("As the Second Circuit has recognized, "[h]ome detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills.") (internal citation omitted); *Tawfik,* 2017 WL 1457494, at *8 (finding that the court was "unconvinced by [the defendant's] attempts to establish that [defendant] is not dangerous and that [the defendant] intends to appear for trial" and rejecting conditions of release, including electronic monitoring); *Pruitt,* 2020 WL 1698661, at *5 ("In view of this evidence [of violent sex trafficking violations], the Court is not persuaded that home confinement and electronic monitoring would adequately protect the public and ensure [the defendant's] appearance were he to be released.")

Accordingly, this Court finds that there are no conditions or combination of conditions that will reasonably assure the safety of the community if Mr. Roberson was released.

## IV.    CONCLUSION

The Court determines based on the record currently before it that no condition or combination of conditions will reasonably assure the safety of the community or Mr. Roberson's appearance.  Accordingly, the Court orders the detention of Mr. Roberson pending trial.

**IT IS SO ORDERED**.

Dated: November 23, 2022                          s/ *Jennifer Dowdell Armstrong*
                                                 Jennifer Dowdell Armstrong
                                                 United States Magistrate Judge

13